**ROESCH, INC. and Marketing Division, Inc., Appellants,**

v.

**STAR COOLER CORPORATION, a Missouri corporation; Hussmann Refrigeration, Inc.; and Tour Ice Midwest, Inc., Appellees.**

**No. 81–1562.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1981.

Decided March 4, 1982.

Rehearing and Rehearing En Banc Granted May 21, 1982.

---

William J. Travis, argued, St. Louis, Mo., for appellants; Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, Mo., of counsel.

Veryl L. Riddle, Thomas C. Walsh, John Michael Clear, argued, St. Louis, Mo., Byron A. Roche, Burton Halpern, Bridgeton, Mo., for appellees Star Cooler Corp. and Hussmann Refrigeration, Inc.; Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., of counsel.

Barry A. Short, Thomas M. Newmark, argued, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for appellee Tour Ice Midwest, Inc.

Before ROSS and STEPHENSON, Circuit Judges, and HOWARD,* District Judge.

STEPHENSON, Circuit Judge.

Plaintiff-appellants Roesch, Inc. (Roesch) and its wholly owned subsidiary, Marketing Division, Inc.,[1] appeal the district court's[2] entry of a directed verdict in favor of defendant-appellees Star Cooler Corporation (Star), Tour Ice Midwest, Inc. (Tour Ice)[3] and Hussmann Refrigeration, Inc. (Hussmann).[4] Roesch's complaint alleged that a conspiracy existed among the defendant-appellees to fix or maintain the resale price of ice merchandisers. Roesch argues that the court erred in directing the verdict because there was substantial evidence from which a jury could reasonably infer the existence of a contract, combination or conspiracy in violation of section 1 of the Sherman Act. We affirm the district court.

## I. BACKGROUND

Star manufactures ice merchandisers, a refrigerated bin often found in grocery or convenience stores which holds and displays packaged ice. Roesch manufactures ice merchandisers and also sells two lines of ice merchandisers manufactured by Leer Manufacturing Company. In March of 1980, Roesch and Star verbally agreed that Roesch would sell a line of "private label" ice merchandisers purchased from Star. Private label refers to the fact that the merchandisers would undergo several changes so that they would resemble Roesch units and would not be identified as being a Star merchandiser. The Roesch name and design would appear on the mer-chandisers, the Roesch nameplate would be attached and Roesch bills of lading would be used in shipping the merchandisers that Star would manufacture for Roesch.

Roesch, as a private label customer, was given the lowest price on the merchandisers that Star made available to its customers. The only other category of Star customer who could purchase the merchandisers at that low price was Star's stocking distributors.[5] Roesch, unlike the stocking distributors, purchased only the ice merchandisers it had already sold through telephone solicitation of customers.

Roesch's telephone solicitation of customers began immediately after the private label arrangement was verbally agreed upon at a meeting between the representatives of the two companies. Roesch sold its private label, Star-built merchandisers as "Star Maid" ice merchandisers. Roesch charged a lower price than the manufacturer's recommended wholesale price.

Star learned of Roesch's actions through two phone calls. A Hussmann salesman in Houston, Mr. Larocca called Mr. Smith of Star and Mr. Carpenter of Tour Ice called Mr. Duncan of Star. In these conversations the two distributors informed the Star employees of the sales and pricing practices of Roesch. In April of 1980, after approximately eleven days of selling Star-built products, Roesch was advised that its verbal agreement with Star was terminated.

On August 9, 1980, Roesch commenced this litigation. Roesch claimed that Star conspired with Tour Ice and Hussmann to terminate it as a part of a price-fixing scheme in violation of section 1 of the Sher-

* The Honorable George Howard, Jr., United States District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

1. Appellants Roesch and Marketing Division, Inc. make the same arguments. Therefore, whenever reference is made to Roesch, such reference also includes its wholly owned subsidiary, Marketing Division, Inc.

2. The Honorable H. Kenneth Wangelin, Chief Judge for the Eastern District of Missouri. The opinion is published at 514 F.Supp. 890 (E.D. Mo.1981).

3. Tour Ice is a distributor of Star ice merchandisers and a franchisee of Tour Ice National, a stocking distributor of Star ice merchandisers.

4. Hussmann and Star are both wholly owned subsidiaries of Hussmann Refrigerator Company. Hussmann acts as a stocking distributor of Star products and competes with Star for the sale of ice merchandisers.

5. Stocking distributors make an initial volume purchase of Star products and stock an inventory of Star products. They employ service personnel, maintain an inventory of spare and repair parts and honor warranty claims.

man Act, 15 U.S.C. § 1. After six days of trial to the jury, the district court ruled that Roesch had failed to present a prima facie case and directed verdicts for Star, Hussmann and Tour Ice. *Roesch, Inc. v. Star Cooler Corp.*, 514 F.Supp. 890 (E.D.Mo. 1981). The district court determined that Roesch had failed to prove a conspiracy between Star and any person or entity to terminate Star's agreement with Roesch. *Id.* at 893. Also, the court stated that Roesch failed to prove that any alleged conspiracy had the effect or was entered into with the intent of unreasonably restraining trade. *Id.* at 895.

## II. ANALYSIS

 Roesch argues that summary procedures such as directed verdicts should be used sparingly in antitrust litigation. However, if an antitrust plaintiff does not present sufficient evidence in his case-in-chief to support a finding in his favor, a district court has a duty to direct a verdict in favor of the defendant. *Chisholm Brothers Farm Equipment Co. v. International Harvester Co.*, 498 F.2d 1137, 1139–40 (9th Cir.), *cert. denied*, 419 U.S. 1023, 95 S.Ct. 500, 42 L.Ed.2d 298 (1974). *See also Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105 (3d Cir. 1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981) (upholding directed verdict against antitrust plaintiff); *Oreck Corp. v. Whirlpool Corp.*, 639 F.2d 75 (2d Cir. 1980) (upholding directed verdict against antitrust plaintiff).[6]

When deciding whether a verdict should be directed, the evidence must be viewed by the court in the light most favorable to the non-moving party. Additionally, the non-moving party must be given the benefit of all legitimate inferences without assessing credibility. *Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 883 (8th Cir. 1978). When the evidence thus viewed leaves no room for any reasonable difference of opinion as to the proper resolution of the case, then the court should resolve the case as a matter of law. *Id.* The district court's opinion in the instant case correctly described and applied the standards for directing a verdict.

 Price fixing, as alleged by Roesch, is a practice that is *per se* illegal under the Sherman Act. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223, 60 S.Ct. 811, 844, 84 L.Ed. 1129 (1940); *Admiral Theatre Corp. v. Douglas Theatre Co.*, *supra*, 585 F.2d at 890. However, to prove that Star, Tour Ice and Hussmann violated section 1 of the Sherman Act, Roesch had to prove that Star's decision to terminate the private label agreement was the product of a contract, combination or conspiracy. *See Admiral, supra*, 585 F.2d at 883. If Star's refusal to deal with Roesch was a unilateral or independent decision, such decision could have been based on Roesch's prices and still not violate section 1 since unilateral action does not violate section 1. *See Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 468–69, 82 S.Ct. 486, 488–489, 7 L.Ed.2d 458 (1962); *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919); *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, *supra*, 637 F.2d at 110; *Quality Mercury, Inc. v. Ford Motor Co.*, 542 F.2d 466, 469 (8th Cir. 1976). Star, as a manufacturer, has the prerogative of deciding with whom it will deal. *See Oreck Corp. v. Whirlpool Corp.*, 579 F.2d 126, 137 (2d Cir.) (en banc), *cert. denied*, 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978).

 Roesch argues that a conspiracy can be inferred from the evidence that both Tour Ice and Hussmann employees called Star and complained about the low prices Roesch was offering customers. The evidence reveals that after customers of Mr. Carpenter of Tour Ice called him and told him Roesch was quoting low prices for Star merchandise, he called Mr. Duncan to determine whether he was receiving the lowest price from Star. Mr. Carpenter understood

---

**6.** Directed verdicts are appropriate tools to end harassing treble damage suits where the alleged injury is merely a result of normal business hazards. *See Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 474, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962) (Harlan, J., dissenting); *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 111 n.2 (3d Cir. 1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981).

that he was supposed to be getting the best price that Star offered. Mr. Carpenter testified that he did not request that any action be taken against Roesch.

The second telephone call relied upon by Roesch is the one made by Mr. Larocca of Hussmann to Mr. Smith of Star. Mr. Larocca told Mr. Smith that Roesch had approached previous customers of Hussmann and offered them Star merchandise at a low price. Mr. Larocca wanted to know what was going on. Mr. Smith told Mr. Larocca that Roesch was apparently not living up to its agreement but that Star could not do anything about the price at which Roesch sold the product. Mr. Smith testified that this call did not involve any request to terminate Roesch.

■ Although there is limited authority to the contrary, see *Girardi v. Gates Rubber Co. Sales Division*, 325 F.2d 196 (9th Cir. 1963), the majority view, which we adopt, is that mere complaints by customers of a manufacturer that distributors and dealers engage in price-cutting are not enough to imply a conspiracy in violation of section 1. Such complaints arise in the normal course of business and do not indicate illegal concerted action. *See Oreck Corp. v. Whirlpool Corp., supra*, 639 F.2d at 80; *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc., supra*, 637 F.2d at 111; *Borger v. Yamaha International Corp.*, 625 F.2d 390, 395 (2d Cir. 1980); *Oreck Corp. v. Whirlpool Corp., supra*, 579 F.2d at 133; *Westinghouse Electric Corp. v. CX Processing Laboratories, Inc.*, 523 F.2d 668, 675 (9th Cir. 1975); *Carr Electronics Corp. v. Sony Corp. of America*, 472 F.Supp. 9, 13 (N.D.Cal.1979); *Interphoto Corp. v. Minolta Corp.*, 295 F.Supp. 711, 719 n.3 (S.D.N.Y.1969), *aff'd per curiam*, 417 F.2d 621 (2d Cir. 1969); *Carbon Steel Products Corp. v. Alan Wood Steel Co.*, 289

F.Supp. 584, 588 (S.D.N.Y.1968). Therefore, assuming the phone calls to Star can be considered complaints, such calls do not imply the conspiracy which Roesch is required to prove to establish a prima facie case.

■ Roesch also argues that Star's recommendation to its distributors to charge at a certain price evidences a price-fixing conspiracy. However, such recommendations by Star are lawful and do not trigger an inference of illegal activity unless there is additional evidence of retail price monitoring or evidence of pressure and coercion to secure adherence to the suggested price. *See Chisholm Brothers Farm Equipment Co. v. International Harvester Co., supra*, 498 F.2d at 1142–43; *Klein v. American Luggage Works, Inc.*, 323 F.2d 787, 791 (3d Cir. 1963). Since the record is devoid of any such additional evidence, Star's mere stating of a suggested resale price does not in itself infer a conspiracy.[7]

■ The record does not contain sufficient evidence to warrant an inference of a conspiracy among the defendants. The jury should be "permitted to draw only those inferences of which the evidence is reasonably susceptible, and may not be permitted to resort to speculation." *Admiral Theatre Corp. v. Douglas Theatre Co., supra*, 585 F.2d at 883 (quoting *Viking Theatre Corp. v. Paramount Film Distributing Corp.*, 320 F.2d 285, 296 (3d Cir. 1963), *aff'd by an equally divided court*, 378 U.S. 123, 84 S.Ct. 1657, 12 L.Ed.2d 743 (1964)). The district court correctly prevented the jury from speculating on the existence of a conspiracy on the basis of such meager evidence.[8]

■ We have examined Roesch's other arguments regarding the exclusion of written contracts[9] and internal Star memoran-

---

**7.** Roesch argues that a phone call from Mr. Rehder of Star to Debra Voges of Roesch was an implied threat of termination because of Roesch's underselling. However, we do not view it as such since Ms. Voges testified that Mr. Rehder suggested Roesch sell at the recommended retail price and that Mr. Rehder did not make any threats to terminate Roesch if it did not sell at the suggested price.

**8.** Roesch also argues that evidence of a conspiracy can be found in the taped phone con-

versation between Mr. Voges of Roesch and Mr. Smith of Star. However, a review of the content of that call reveals no reference to any other distributor or to any agreement between Star and its other distributors. Therefore, the call does not offer any evidence to support Roesch's allegation of a conspiracy among the defendants.

**9.** The district court did not abuse its discretion in refusing to admit into evidence dealer agreements concerning minimum prices which were

dum, settlement testimony and voir dire. These arguments have no merit. We affirm the district court.

Affirmed.

entered into by prior Star management and were cancelled immediately following acquisition of Star by Hussmann in 1978. Roesch's complaint charges illegal activity commencing in the summer of 1979.