The **GARMENT DISTRICT, INC., Plaintiff,**

v.

**BELK STORES SERVICES, INC., Matthews-Belk Company, and Jantzen, Inc., Defendants.**

No. C–C–84–0543–P.

United States District Court, W.D. North Carolina, Charlotte Division.

Sept. 18, 1985.

Stacy J. Haigney and Herbert S. Kassner, Kassner, Haigney & Thompson, New York City, C. Michael Wilson, Gerdes, Mason, Brunson, Wilson & Tolbert, Charlotte, N.C., for plaintiff.

E. Osborne Ayscue, Jr., Helms, Mulliss & Johnston, A. Ward McKeithen, Robinson, Bradshaw & Hinson, Charlotte, N.C., Donovan, Leisure, Newton & Irvine; Sullivan & Cromwell, New York City, for defendants.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER came on to be heard before the undersigned judge and a jury on September 11, 1985 at Charlotte, North Carolina.

The Plaintiff was represented by Herbert Kassner and Stacy Haigney, Attorneys at Law, and C. Michael Wilson, Attorney at Law. The Defendant Jantzen was represented by A. Ward McKeithen, Attorney at Law, and the Belk Defendants were represented by E. Osborne Ayscue, Jr. and Ben Hudson, Attorneys at Law. At the close of the Plaintiff's evidence all the Defendants moved for a directed verdict pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, which was granted in open court.

If an antitrust plaintiff does not present sufficient evidence of his case in chief, a district court has a duty to direct a verdict in favor of the defendant. *Roesch, Inc. v. Star Cooler Corp.*, 671 F.2d 1168 (8th Cir. 1982).

As stated in the Plaintiff's trial brief, "the essence of the Garment District's claim is under Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1)" which reads as follows:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations is declared to be illegal.

In order for the plaintiff to survive a motion for directed verdict, the plaintiff's evidence when considered in the light most favorable to the plaintiff must demonstrate: (1) that the Defendants contracted,

combined or conspired among each other, (2) that the combination or conspiracy produced adverse anti-competitive effects within the relevant product and geographic markets, (3) that the objects of and conduct pursuant to the conspiracy were illegal, and (4) that the Plaintiff was injured as a proximate result of the conspiracy. *Davis-Watkins Co. v. Service Merchandise*, 686 F.2d 1190, 1195–96 (6th Cir.1982).

Now, turning to the first element, "conspiracy," the Plaintiff contends that there was a conspiracy "between the defendant Belk Stores Buying Services, Inc. and Matthews-Belk (hereinafter jointly referred to as "Belk") on the one hand and Jantzen on the other to refrain from selling Jantzen merchandise to plaintiff from early 1981 to the present because the plaintiff was a discounter and that the loss of Jantzen merchandise by the Garment District was, 'in purpose and effect,' a coerced price fixing agreement in *per se* violation of Section 1 of the Sherman Act."

The Plaintiff's evidence in the light most favorable to the Plaintiff was that Belk's told Jantzen representatives that if Jantzen continued to supply the Plaintiff that Belk's would terminate its business with Jantzen. The Plaintiff produced no evidence that there was any agreement or "conspiracy" between Jantzen and Belk to maintain resale prices. A conspiracy to maintain resale prices simply was not established by proof that the Defendant manufacturer terminated the Plaintiff following or even in response to, complaints or threats by the Defendant Belk. Independent action by a manufacturer and concerted action on non price restrictions must be distinguished from price fixing agreements. On a claim of concerted price fixing, the antitrust plaintiff must present evidence to carry the burden of proving there was such an agreement. *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). This the Plaintiff has failed to do.

The Plaintiff has produced absolutely no evidence of any agreement between the Defendants Jantzen and Belk with reference to fixing prices. On the contrary, the only evidence is that all retailers of Jantzen goods, including Belk and the Plaintiff, set their prices with no interference from the Defendant Jantzen. Thus, the Plaintiff has failed to satisfy the first element that there was a conspiracy to fix prices because Jantzen refused to sell to the Plaintiff.

If the evidence considered in the light most favorable to the Plaintiff showed that Jantzen terminated the Plaintiff as a result of Belk's Complaint and the statement that Belks would terminate its business with Jantzen if Jantzen continued to do business with the Plaintiff, the next question is whether that action had an anti-competitive effect within the relevant product and geographic market.

The answer is clearly "no." Limiting the number of distributors, or even eliminating existing ones to make the remaining ones sale outlets for a region, is conduct judged under the rule of reason. The evidence showed with few exceptions that Jantzen products were sold only in department and specialty stores, and that Jantzen did not sell its products to self-service operations of the kind operated by Plaintiff. Horizontal restraints serve to stifle competition. However, vertical intrabrand refusals to deal, on the other hand, may limit *intra* brand competition, but at the same time promote *inter* brand competition. Limiting intrabrand competition may have a positive effect on interbrand competition in the sportswear field. *Terry's Floor Fashions v. Burlington Industries*, 763 F.2d 604 (4th Cir.1985) (Winter, C.J., concurring). The only brand the Plaintiff could not handle because of the alleged concerted action of the Defendants was Jantzen. To paraphrase Justice Holmes in his dissenting opinion in *Dr. Miles Medical Co. v. John D. Park*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911): There may be necessaries that sooner or later must be dealt with, like short rations in a shipwreck, but Jantzen sportswear is not one of them. The Country, the economy and Gaston County, North Carolina could survive without Jantzen. In any

event, the evidence was that at least one other store in Gastonia, Iveys, sold Jantzen products.

■ Now, turning to the third element that the objects of the alleged conduct of the Defendants were illegal, there is no evidence that the Defendants engaged in any conspiracy to fix prices. Considering the evidence in the light most favorable to the Plaintiff that the Plaintiff was terminated by the Defendant Jantzen as a result of complaints by Defendant Belk, that conduct is not illegal. Permitting an *agreement* to be inferred merely from the existence of complaints or from the fact that termination came about in response to complaints could deter or penalize perfectly legitimate conduct. *Monsanto, supra* 465 U.S. at ——, 104 S.Ct. at 1470, 79 L.Ed.2d at 785.

Finally, in order to prevail, the Plaintiff must demonstrate that it was injured as a proximate result of the conspiracy.

■ The statute, 15 U.S.C. Section 15, which gives the private litigant the right to sue, imposes the basic requirement that there be injury to Plaintiff's business or property. It has, therefore, been held repeatedly that the gist of the action is legal injury, not mere violation of the statute. The damages for which recovery may be had in a civil action must be proximately related to the conspiracy; recovery for the violation is not based on the conspiracy itself but on injury to the Plaintiff produced by specific overt acts pursuant to the conspiracy. The mere existence of a violation is not sufficient *ipso facto* to support the action; a private person has no right to complain of a violation of Section 1, nor does such a violation *per se* give a private cause of action. *See Winkler & Smith Citrus Products Co. v. Sunkist Growers, Inc.,* 346 F.2d 1012, n. 1 (9th Cir.1965).

■ The Plaintiff did not offer in evidence any financial statements to substantiate its claim of damages. On cross-examination of Plaintiff's witnesses, however, it was demonstrated that the Plaintiff had a loss from operations from its inception in August 1981 until it closed in 1983. (The Plaintiff did have a profit for the period ending January 31, 1982 primarily because of interest earnings.)

There was no credible evidence from the Plaintiff that it had suffered any financial loss as a result of the Defendant Jantzen's termination of sales to the Plaintiff in 1982.

Cross-examination of the Plaintiff's witnesses revealed that there had been six to eight thousand dollars misappropriated; that the Plaintiff's accountant had called the Plaintiff's attention to numerous poor business and accounting practices; that there had been approximately $100,000 shrinkage in inventory during the operation of the business; that Jay Crippen, a majority shareholder in the Plaintiff corporation, was also majority shareholder in another store in Knoxville, Tennessee (which is also in bankruptcy); that merchandise had been shipped from the Plaintiff to the Knoxville store; and that there were numerous other defalcations on the part of the management of the Plaintiff. All of this evidence leads to the inevitable conclusion that the Plaintiff's survival was doomed from the start by the failure of its management and not because it did not receive Jantzen merchandise from Jantzen after 1982.

In short, the Plaintiff did not show that it suffered any damage because of Defendant Jantzen's refusal to sell to it. Any projection of damages on this evidence would be pure speculation and guesswork, which would not support an antitrust judgment for the Plaintiff.

In conclusion, the Plaintiff has not produced evidence which would support a verdict that the Defendants had violated Section 1 of the Sherman Act.

The Defendants' motion for a directed verdict pursuant to Rule 50(a) of the Federal Rules of Civil Procedure is GRANTED.