**In re James F. MALGET, Jr., Debtor.**

**Rosaria GIACALONE and Anthony Giacalone, Plaintiffs,**

**v.**

**James MALGET, Defendant.**

Bankruptcy No. 93–01613–A7.
Adv. No. 93–90443–A7.

United States Bankruptcy Court,
S.D. California.

April 4, 1994.

Robert P. Ottilie, San Diego, CA, for plaintiffs.

George P. Mills, Carlsbad, CA, for debtor.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

This is an action to except a debt from discharge pursuant to 11 U.S.C. section 523(a)(2)(A). This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. section 1334. This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(I).

## FACTS

James F. Malget, Jr. (debtor) and Jeffrey L. Pipher (Pipher) were former co-workers and friends. In August or September 1988, they entered into a partnership to purchase, renovate and resell homes. On September 16, 1988, Pipher, presumably in furtherance of the partnership venture, purchased a condominium in El Cajon, California, by assuming the existing first deed of trust held by the Union Bank to secure a $55,000.00 loan. On September 22, 1988, Pipher purportedly sold the condominium, subject to the Union Bank's deed of trust, to the debtor. To evidence this sale, Pipher executed a grant deed to the debtor and debtor in return executed a promissory note for $18,750.00 in favor of Pipher and also delivered to Pipher a second deed of trust to secure the payment of the promissory note. These transactions were a sham. The paper trial was generated to establish an inflated value for the property to enable Pipher to use this inflated value in

negotiating the sale of the promissory note. On September 27, 1988, Pipher sold the debtor's $18,750.00 note for $11,500.00 to Anthony Giacalone. Payments on Union Bank's deed of trust were not made by the debtor or Pipher. The bank served notice of default upon the debtor and when the defaults were not cured, the bank instituted foreclosure proceedings and purchased the condominium at the foreclosure sale. Anthony Giacalone's second deed of trust was extinguished and his investment was lost.

On April 12, 1991, Anthony Giacalone and Rosaria Giacalone filed an action in the state court against the debtor for breach of contract and fraud.[1] On February 16, 1993, the debtor filed his Chapter 7 petition in bankruptcy and on May 17, 1993, Rosaria Giacalone, by herself and as Anthony Giacalone's representative, filed a complaint to except from discharge their scheduled debt of $23,062.50 pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

The plaintiffs contend that: (1) Pipher knowingly misrepresented the value of the condominium to induce Anthony Giacalone to purchase the $18,750.00 note; (2) Giacalone relied upon these representations and as a result thereof has suffered the loss of his investment; (3) Pipher's fraudulent conduct can be imputed to the debtor and, therefore, their debt is nondischargeable by virtue of section 523(a)(2)(A).

## DISCUSSION

11 U.S.C. § 523(a)(2)(A) states in relevant part:

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, ... to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud ...

 For a debt to be nondischargeable under section 523(a)(2)(A), a creditor must establish that:

(1) the debtor made representations;

---

1. They did not file an action against Jeffrey Pipher because he apparently had left the jurisdic-

tion.

(2) that at the time he knew were false;

(3) he made these representations with the intention and purpose of deceiving the creditor;

(4) the creditor relied upon the representations;

(5) and the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Britton,* 950 F.2d 602, 604 (9th Cir. 1991); *Houtman v. Mann,* 568 F.2d 651 (9th Cir.1978.) In addition, the creditor must establish not only that he relied upon the representation, but that his reliance was justifiable. *In re Kirsh,* 973 F.2d 1454 (9th Cir. 1992). The plaintiffs must prove each and every element of a section 523(a)(2)(A) action by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Lawler,* 141 B.R. 425 (9th Cir. BAP 1992). Failure to prove any element is fatal to the plaintiff's case. *In re Gans,* 75 B.R. 474 (Bankr.S.D.N.Y. 1987).

■ This case is unusual and possibly unique in that the principal players are unavailable to testify. Pipher, who allegedly committed the fraud, has left the jurisdiction, and Anthony Giacalone, the alleged victim of the fraud, died prior to institution of this action.[2] The unavailability of Anthony Giacalone and Pipher obviously creates problems of proof for the plaintiffs. However, the fact that proof is difficult to obtain or that a party whose testimony is essential is unavailable does not relieve the party who has the burden of proof from carrying that burden.

■ It is unnecessary to decide whether the debtor and Pipher actually intended to buy properties, remodel and resell them, or whether Pipher took advantage of the debtor and used the debtor to enable him to fleece prospective investors. What is clear is that the debtor ostensibly purchased the condominium and executed the promissory note and deed of trust in part payment of the purchase price with the knowledge that Pipher would negotiate the note to obtain financing for the partnership venture, or, as at it turned out, to permit Pipher to embark on an agenda of his own. It is undisputed that the Debtor did not make any false representations directly to Mr. Giacalone, and in fact did not even know of Giacalone's existence until after Giacalone commenced the state court litigation. However, the debtor entered into the sham transaction with Pipher with the knowledge the documents created by that transaction would be used by Pipher to negotiate the sale of the debtor's note. In addition, the debtor and Pipher were partners and it is well settled that for the purpose of determining dischargeability under § 523(a)(2)(A) the fraud of one partner can be imputed to the debtor partner. *In re Ledford,* 970 F.2d 1556 (6th Cir.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993); *In re Luce,* 960 F.2d 1277 (5th Cir.1992); *In re Calhoun,* 131 B.R. 757 (Bankr.D.C.1991); *In re Figge,* 94 B.R. 654 (Bankr.C.D.Cal.1988). Thus, if the plaintiffs can establish that Pipher knowingly made false representations with respect to the condominium to persuade Anthony Giacalone to purchase the promissory note and Giacalone justifiably relied upon those representations, the fraud of Pipher is to be imputed to the debtor and the loss that Giacalone suffered would constitute a nondischargeable debt under section 523(a)(2)(A).

Counsel for the plaintiffs did not introduce any evidence which directly reveals what actually took place between Pipher and Giacalone. Giacalone and Pipher, as previously indicated, were unable to testify. The debtor was not present at any meeting or meetings between Pipher and Giacalone, and Mrs. Giacalone did not have any knowledge of the business dealings of her husband. Since the plaintiffs were unable to introduce direct evidence with respect to any of the elements of their cause of action, they now rely solely on the inferences that may be drawn from the testimony of the witnesses who were not present at any discussions that Giacalone and Pipher may have had with respect to the sale of the note.

■ Inferences may be relied upon by a party to carry his burden of proof, but the

---

**2.** Anthony Giacalone died on April 19, 1991, shortly after the state court action was instituted.

right of a court or jury to draw inferences is not unlimited. An inference, or presumption of fact, has been described as "a deduction of fact that may be logically and reasonably drawn from another fact or group of facts found or otherwise established in an action." *California Evidence Code § 600(b)* (West 1994); *See also, Maggio v. Zeitz*, 333 U.S. 56, 65–66, 68 S.Ct. 401, 406, 92 L.Ed. 476 (1948) ("[A] 'presumption of fact' is, however, nothing more than a process of reasoning from one fact to another, an argument which infers a fact otherwise doubtful from a fact which is proved.") Inferences are an indispensable tool of logical analysis and "[t]he trial judge ... [a]s a factfinder ... is authorized to draw reasonable inferences, ... [a]n inference however, must be supported by evidence of sufficient probative value to form a rational basis for the court's conclusion; it must be drawn by reason from the facts on which it purports to rest." *Dreijer v. Girod Motor Company*, 294 F.2d 549, 554 (5th Cir. 1961). "[I]n drawing inferences, the trier of fact is not permitted to resort to speculation and surmise." *National Industries v. Republic Nat. Life Ins. Co.*, 677 F.2d 1258, 1265 (9th Cir.1982); *Accord, Richard Short Oil Co., Inc. v. Texaco Inc.*, 799 F.2d 415, 419 (8th Cir.1986); *British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). It is by reference to this standard that the plaintiffs' argument must be evaluated. The evidence establishes that Pipher's sale of the condominium to the debtor and execution of the note and deed of trust to Pipher by the debtor were sham transactions and were entered into solely for the purpose of generating documents to establish inflated value for the property to enable Pipher to negotiate the note and deed of trust based upon this inflated value. From this fact it is permissible to infer that Pipher knowingly misrepresented the value of the condominium based upon the fictitious sale to the debtor and that the representation was made to induce Giacalone to purchase the $18,750.00 note.

However, to prevail in this action, the plaintiffs must establish not only that Pipher knowingly made the false representation but that Giacalone relied upon the representation and, additionally, that the reliance was justifiable. *In re Kirsh, supra.*[3] The Court will first address whether Giacalone relied upon Pipher's representations.

■ The record is devoid of any facts which would permit the Court to reasonably infer that Giacalone relied upon any representations that Pipher made. The plaintiffs contend that the testimony of George Buck, president of Mission Escrow Company, establishes such reliance. Mr. Buck testified that the escrow was completed in his office, that he saw the grant deed that Pipher transferred to the debtor and the promissory note and deed of trust that debtor executed in favor of Pipher. Mr. Buck also testified that Pipher told Giacalone "he wanted his money that day or he wasn't going to sell the note." This testimony merely establishes that escrow was closed at Mr. Buck's office; that Mr. Buck was aware of the transfer of the property by Pipher to debtor and the execution of the promissory note and deed of trust by the debtor; that the note and deed of trust were being transferred to Giacalone;

---

**3.** Section 523(a)(2)(A) and (B) except from discharge debts that are incurred by the fraudulent conduct of a debtor. Subsection (B) of section 523(a)(2) expressly provides that a creditor must establish that he reasonably relied upon the false representations. In contrast, subsection (A) does not set forth any of the elements that a creditor must establish to prevail. It is generally agreed that Congress in adopting section 523(a)(2)(A) intended to incorporate the common law definition of fraud and since reliance is a factor in that definition, a creditor in a section 523(a)(2)(A) action must establish that the creditor relied upon the representations. The courts, however, are in disagreement as to the degree of reliance required. The Eighth Circuit, *In re Ophaug*, 827 F.2d 340, 343 (8th Cir.1987) holds that only actual reliance is required. In contrast, the Tenth Circuit, *In re Mullet*, 817 F.2d 677, 679–680 (10th Cir.1987); the Sixth Circuit, *In re Phillips*, 804 F.2d 930, 933 (6th Cir.1986); the Eleventh Circuit, *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986); and the Seventh Circuit, *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985) hold that actual reliance is not sufficient, that the reliance must be reasonable. The Ninth Circuit has rejected both standards and holds that the reliance must be justifiable. *In re Kirsh*, 973 F.2d 1454 (9th Cir.1992). I leave for another time discussion of what differences there are, if any, between reasonable and justifiable reliance.

and that Pipher wanted the transaction to be closed that day. There is nothing in this testimony that even remotely relates to whether Giacalone did or did not rely upon Pipher's representation, nor does this testimony constitute facts from which an inference of reliance may reasonably be drawn. To conclude that Giacalone relied upon representations made by Pipher, the Court would have to resort to mere speculation and surmise. The Court is not permitted to do so. *Roesch, Inc. v. Star Cooler Corp.*, 671 F.2d 1168 (8th Cir.1982), *cert. denied*, 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 180 (1984).

Moreover, the facts as established actually justify the inference that Giacalone did not rely upon Pipher's representations. Anthony Giacalone remodeled homes for a living. He also purchased parcels of unimproved property, built homes on the property and sold them. George Buck, president of Mission Escrow Company, testified that his office handled between 40 and 47 escrow transactions for homes that Giacalone built and sold. Apparently, Giacalone had experience, knowledge and competence in the construction and sale of homes. Based upon these facts, it is a permissible inference that Giacalone, rather than relying upon the representations of Pipher, made his own independent investigation as to the value of the property and, based upon that investigation, concluded that it was a good deal to purchase the note.

Counsel for plaintiffs has not addressed the issue of justifiable reliance. There is no reason for the Court to do so, not only because counsel did not address it, but also because no purpose would be served since the plaintiffs have not established that Giacalone relied upon any alleged representations made by Pipher.[4]

For the foregoing reasons, the Giacalone debt is determined to be dischargeable.

This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. An appropriate order to be submitted by counsel for debtor within 10 days from the date of this opinion.

---

4. Counsel for plaintiffs apparently assumed that he had to establish only actual reliance and presumably made this assumption because he did not uncover *Kirsh* in his research.

Moreover, if justifiable reliance were an issue, it is abundantly clear that there would be no basis for inferring that Giacalone justifiably relied upon Pipher's representations. To determine whether a creditor justifiably relied upon a representation "the court must look to all of the circumstances surrounding the particular transaction." *In re Kirsh, supra* at 1460. The surrounding circumstances generally include such matters as the relationship of the parties, the expertise, knowledge and competence of the creditor with respect to the transaction involved. There is nothing in the record that even remotely provides any clue as to the nature of Pipher and Giacalone's relationship, how they met, whether they knew each other before this transaction, or any other facts about their relationship which would tend to establish whether Giacalone could or could not have justifiably relied upon any representation made in connection with the transaction which gave rise to this dischargeability action.

The record, however, does include testimony that would permit the Court to infer, even if Giacalone had relied on Pipher's representations, that the reliance was not justifiable. To decide whether or not to purchase the note, Giacalone had to determine the value of the condominium that served as security for the note. He could do so by relying on Pipher's representations of value or by making his own determination. If a person has the background to enable him to determine the truth or falsity of a fact, any claimed reliance on that fact is not justifiable. A person who has "special knowledge, experience and competence, . . . may not be permitted to rely on representations that an ordinary person would properly accept." *In re Kirsh, supra*, 1458. Giacalone was involved in the business of constructing, purchasing and selling homes. It is reasonable to assume that he would have knowledge, and experience in determining the value of property. Therefore, it would also be reasonable to infer that Giacalone, if he had testified, would not have been permitted to contend that his reliance on Pipher's representation as to value was justifiable.

Other facts in the record also create doubt that Giacalone could have established that he justifiably relied on Pipher's representations. Pipher offered to sell the note to Giacalone at a substantial discount. The testimony also establishes that Pipher told Giacalone that he "wanted his money that day or he wasn't going to sell the note." It is questionable whether under such circumstances a person may justifiably rely upon the representations made to persuade him to consummate the sale.