James A. WILLIS, Plaintiff,

v.

Bert COOL, et al., Defendants.

No. 78–0300–CV–W–9.

United States District Court,
W. D. Missouri, W. D.

Sept. 1, 1982.

Arthur A. Benson, II, Kansas City, Mo., for plaintiff.

Karl F. Schmidt, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

BARTLETT, District Judge.

 Plaintiff James A. Willis contends that defendants Bert Cool, Sylvester Young and James Campbell, all former Kansas City, Missouri police officers, deprived him of his constitutional "rights to security of person and freedom from arrest, except upon probable cause, guaranteed by the Fourth Amendment to the United States Constitution, and his rights not to be deprived of liberty without due process of law, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution." Complaint ¶ 13. Jurisdiction was premised on 42 U.S.C. § 1983 and § 1985.[1]

Trial of the case commenced on March 8, 1982, and continued through March 11, 1982, at which time plaintiff rested his case in chief. Defendants then moved for a directed verdict and to dismiss for lack of subject matter jurisdiction. After hearing counsels' arguments, considering the parties' trial briefs, and viewing the evidence in the light most favorable to plaintiff and giving the plaintiff the benefit of all legitimate inferences without assessing credibility, the Court determined that there was insufficient evidence to support a jury verdict against defendants. Plaintiff's evidence failed to establish a claim under 42 U.S.C. § 1983. Therefore, on March 12, 1982, the Court directed a verdict in favor of defendants pursuant to Rule 50, Federal Rules of Civil Procedure. *Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d 877, 883 (8th Cir. 1978).

### Factual Background[2]

On July 15, 1970, Leon Jordan, a prominent leader of the black community in Kansas City, Missouri, was murdered outside his place of business. The initial intensive investigation failed to solve the crime. From 1970 to November, 1972, the investigation was reopened from time to time to pursue new leads or reexamine old leads.

At the general election in November, 1972, Ralph Martin was elected prosecuting attorney of Jackson County, Missouri. The unsolved Jordan murder was the case of the greatest public importance pending in the Jackson County Prosecutor's office at the time. Martin took a personal interest in the case after the election.

On January 22, 1973, defendants Cool and Young were requested by defendant Campbell to bring Kenneth Irvin, the clean-up man in Jordan's tavern the night of the murder, to police headquarters for another polygraph examination. Immediately after the murder, Irvin had told police that he did not see the killer. Investigation Report, Metropolitan Squad, July 15, 1970, P. Ex. 114. A polygraph examination administered on July 23, 1970, indicated that Irvin was probably not telling the truth when he denied seeing the killer. Irvin then admitted that he saw the party who shot Jordan. Irvin Statement and Polygraph Examination Report, July 23, 1970, P. Ex. 9. Although he described the person he saw, Irvin did not identify that person until January 22, 1973. In fact, on August 10, 1972, Irvin told the police that his statement on July 23, 1970, was the result of a nervous condition and he "didn't see anything." Report, Kansas City, Missouri, Police Department, August 10, 1972, P. Ex. 8.

During the subsequent polygraph examination on January 22, 1973, there were indications of deception when Irvin denied that he could identify the person he saw the evening Jordan was murdered. After the

---

1. This Court does not have jurisdiction under § 1985 because no facts were alleged or proven from which the jury could conclude that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus ..." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Jones v. United States,* 536 F.2d 269, 271 (8th Cir. 1976). *cert. denied,* 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977); *Barnes v. Dorsey,* 480 F.2d 1057 (8th Cir. 1973).

In addition, any claim under § 1985 is deemed waived because it was not included as an issue in the pretrial order designating the issues for trial entered with the consent of the parties on March 3, 1982.

2. This summary is not intended to summarize all the evidence presented by plaintiff. See references to additional evidence presented by plaintiff in the discussion later in the opinion about the inadequacy of plaintiff's evidence.

polygraph operator advised Irvin that the polygraph "indicated that he was not being truthful when denying knowledge" of who shot Jordan, Irvin "stated that he had seen the person who shot Jordan before and had observed him in the Green Duck Tavern drinking beer on occasions prior to the offense and could probably identify him when seeing him again. . . ." The polygraph examiner then showed Irvin thirteen mug shots from which Irvin identified plaintiff "as being the party he observed shoot Jordan and run from the scene." Polygraph Examination Report, Kansas City, Missouri, Police Department, January 22, 1973, P. Ex. 15. Irvin was turned over to defendant Cool for the taking of a statement. An Assistant Jackson County Prosecuting Attorney was summoned and Irvin gave a statement again identifying plaintiff as the killer. Statement of Kenneth Earnest Irvin, January 22, 1973, P. Ex. 11.

On January 26, 1973, the Jackson County Prosecuting Attorney presented two witnesses to the grand jury, defendant Cool and Kenneth Irvin. After Irvin identified plaintiff as the killer he was questioned at length by an assistant prosecuting attorney and by grand jurors about many factors touching on his credibility including: why he delayed two and one-half years in identifying plaintiff; whether losing his job recently plus the outstanding reward affected his testimony; and about various inconsistencies between his observations and certain physical facts. Transcript, Grand Jury Proceedings, January 26, 1973, P. Ex. 1. Prosecuting Attorney Martin was present during the testimony and thought Irvin's testimony was truthful. The grand jury indicted plaintiff for Jordan's murder on January 26, 1973.

Plaintiff was arrested and charged with the murder of Leon Jordan. Plaintiff spent 5 or 6 days in jail before bond could be arranged. He expended substantial amounts of money in attorneys' fees and expenses in defending himself. After a four-day trial in December, 1973, plaintiff was found not guilty by a Jackson County, Missouri, jury.

*Failure to State a Claim Under § 1983*

Plaintiff's innocence of the charge contained in the indictment

is largely irrelevant to his claim of deprivation of liberty without due process of law. The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.

*Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (footnote omitted).

Under 42 U.S.C. § 1983 civil liability is imposed only upon one "who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." Therefore, a public official is liable under § 1983 only if he causes a person to be deprived of a right secured by the Constitution. *Baker v. McCollan,* 443 U.S. at 142, 99 S.Ct. at 2693.

To establish a claim under 42 U.S.C. § 1983 two elements must exist. First, the plaintiff must have suffered the deprivation of federally protected rights, privileges, or immunities as the result of action taken. . . . Second, such deprivation must have been caused by a person acting under color of state law.

*Triplett v. Azordegan,* 570 F.2d 819, 822 (8th Cir. 1978) (citations omitted).

Plaintiff charges that (1) defendant Cool in his testimony before the grand jury knowingly testified falsely and incompletely; (2) defendants knowingly caused "perjured or untrue" testimony by Kenneth Irvin to be presented to the grand jury on January 26, 1973; and (3) defendants knowingly caused to be withheld from the grand jury exculpatory evidence concerning plaintiff. See, Complaint, Standard Pretrial Order No. 2, Plaintiff's Memo on Issues Presented filed March 4, 1982, and plaintiff's opening statement to jury.

■ The constitutional provisions allegedly violated by defendants' actions are the Fourth, Fifth, and Fourteenth Amendments' protection against deprivation of liberty without due process of law. Specifically, a person may not be arrested without probable cause, defined in terms of facts and circumstances " 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' " *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). Whenever possible the existence of probable cause should be determined by a neutral and detached magistrate or by a grand jury's judgment. *Id.* at 117, 95 S.Ct. at 864.

The grand jury conducts an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person. The grand jury's investigation power is broad.

> The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. ·Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence [citations omitted] or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination [citation omitted].

*United States v. Calandra*, 414 U.S. 338, 344–45, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974).

The *Calandra* decision illustrates the extent to which the United States Supreme Court has gone to limit challenges to grand jury proceedings by defendants in criminal cases. Following previous decisions such as *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) which had resisted efforts to undermine the historical function of the grand jury, the Supreme Court in *Calandra* determined that whatever deterrent to police misconduct might result from preventing the use of improperly seized evidence before a grand jury was outweighed by the potential damage to the role and functions of the grand jury.

The same policy considerations found so compelling in *Costello* and *Calandra* are applicable here. Permitting challenges to the credibility or reliability of evidence presented to the grand jury would delay and disrupt grand jury proceedings just as much as challenges to illegally seized evidence. The "public's interest in the fair and expeditious administration of the criminal laws" [*United States v. Dionisio*, 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973)] would be frustrated unduly in the manner described in *Calandra*.

> Permitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings. Suppression hearings would halt the orderly progress of an investigation and might necessitate extended litigation of issues only tangentially related to the grand jury's primary objective. The probable result would be "protracted interruption of grand jury proceedings," *Gelbard v. United States*, 408 U.S. 41, 70, 92 S.Ct. 2357, 2372, 33 L.Ed.2d 179 (1972) (White, J., concurring), effectively transforming them into preliminary trials on the merits. In some cases the delay might be fatal to the enforcement of the criminal law. . . . In sum, we believe that allowing a grand jury witness to invoke the exclusionary rule would unduly interfere with the effective and expeditious discharge of the grand jury's duties. [Footnote omitted]

*Calandra*, 414 U.S. at 349–50, 94 S.Ct. at 620–621.

Furthermore, permitting Federal trial juries in § 1983 cases such as this to sit in judgment on the adequacy of State grand jury probable cause determinations and on the participation of State officials in those proceedings would encourage unwarranted Federal intrusion into the administration of State judicial systems.

■ Every citizen's constitutional right to be free from arrest or detention unless a finding of probable cause has been made is satisfied by an indictment fair upon its face returned by a properly constituted grand jury even if based on unreliable, even perjured, testimony. An indictment so returned conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Gerstein v. Pugh,* 420 U.S. at 117, n. 19, 95 S.Ct. at 865, n. 19; *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956); and *Rodriguez v. Ritchey,* 556 F.2d 1185 (5th Cir. 1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978).

■ Plaintiff does not dispute that he was indicted on January 26, 1973, by a Jackson County grand jury. No contention is made that there was any deficiency on the face of the indictment or that the grand jury was improperly constituted. Furthermore, plaintiff conceded that on its face, witness Irvin's testimony before the grand jury would be sufficient to support a finding of probable cause and the issuance of an indictment. Therefore, the requirements of procedural due process were met before plaintiff was deprived of his liberty. Plaintiff was not deprived of his constitutional right to be arrested and detained only if there was probable cause to believe that he had committed a crime. *Witt v. Harbour,* 508 F.Supp. 378, 379 (W.D. Va. 1980), *aff'd,* 644 F.2d 883 (4th Cir. 1981), *cert. denied,* 454 U.S. 879, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981).

Plaintiff argues that the only fair inference from *Ames v. United States* 600 F.2d 183 (8th Cir. 1979) is that there are circumstances under which the "chain of causation" between allegedly improper investigative activities and the institution of criminal proceedings is not broken by the grand jury indictment. *Ames* involved the analysis of the tort of malicious prosecution in the context of a claim against employees of the FBI and Justice Department under the Federal Tort Claims Act.

■ A claim for malicious prosecution does not become a § 1983 claim merely because the defendants are police officers. *Curry v. Ragan,* 257 F.2d 449 (5th Cir. 1958), *cert. denied,* 358 U.S. 851, 79 S.Ct. 79, 3 L.Ed.2d 85 (1958). The Supreme Court in *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (citation omitted) rejected "any attempt to derive from congressional civil rights statutes a body of general federal tort law . . . ." The Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan,* 443 U.S. at 146, 99 S.Ct. at 2695. State law and traditional principles of tort law provide a completely adequate remedy for legitimate claims of malicious prosecution. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *Restatement (Second) of Torts* § 653, and *Huffstutler v. Coates,* 335 S.W.2d 70, 73 (Mo. 1960).

*Inadequacy of Plaintiff's Evidence to Permit Jury to Conclude § 1983 Violated*

■ An additional ground for granting defendants' motion for a directed verdict was the Court's belief that this federal trial jury could not reasonably conclude from the evidence presented that the State grand jury found probable cause improperly or that the process was subverted by the actions of the defendants in *knowingly* supplying perjured testimony to the prosecuting attorney to be presented to the grand jury. The premise upon which all else depends under plaintiff's theory is that Irvin did not in good faith believe that plaintiff was the person he saw backing away from Jordan's body with a shotgun and that the defendants *knew* Irvin was not telling the truth.

In considering a motion for directed verdict at the close of plaintiff's evidence "[t]he question is whether there is sufficient evidence to support a jury verdict against the moving party." *Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d 877, 883 (8th Cir. 1978) The Court must view plaintiff's evidence in the light most favorable to plaintiff. Plaintiff must be afforded the benefit of all legitimate inferences without assessing credibility. However, " '[a] jury is permitted to draw only those inferences of which the evidence is reasonably susceptible, and may not be permitted to resort to speculation.' " *Id.,* (quoting *Viking Theatre Corp. v. Paramount Film Distributing Corp.,* 320 F.2d 285, 296 (3d Cir. 1963), *aff'd by an equally divided court,* 378 U.S. 123, 84 S.Ct. 1657, 12 L.Ed.2d 743 (1964)); *Roesch v. Star Cooler Corp.,* 671 F.2d 1168, 1172 (8th Cir. 1982). Applying these standards, only by resorting to speculation could this trial jury have determined that the State grand jury improperly concluded that there was probable cause to indict plaintiff for the murder of Leon Jordan *and* that the defendants, or any of them, knew Irvin's testimony was perjurious if, in fact, it was.

Plaintiff conceded that the testimony of eyewitness Irvin on its face was sufficient to support a finding of probable cause. However, plaintiff argued that Irvin was not telling the truth when he identified plaintiff as the killer. Many of the factors affecting Irvin's credibility relied upon by plaintiff to support this argument had been discussed before the grand jury when Irvin testified. For instance, Irvin was examined before the grand jury about why he delayed so long in making an identification. Despite the delay in identification and other matters casting doubt on Irvin's credibility, the grand jury found probable cause to believe that plaintiff was the killer. The only reasonable assumption is that the grand jury believed Irvin's testimony.

Plaintiff's evidence was insufficient to permit this trial jury to second-guess reasonably the State grand jury's conclusion about Irvin's credibility. For instance, Irvin testified in person before the State grand jury but was not called as a witness by plaintiff in this trial.

Under plaintiff's evidence this trial jury could only have speculated about whether Irvin was or was not telling the truth when he identified plaintiff before the grand jury as the person he saw the night of July 15, 1970. More importantly plaintiff's evidence was insufficient to permit this trial jury to conclude reasonably that Irvin did not *believe* that he saw plaintiff on the night of July 15, 1970.

Simply put, plaintiff's evidence about the defendants' involvement in the Jordan murder investigation and the presentation to the grand jury on January 26, 1973, will not support the conclusions plaintiff urged upon this trial jury, i.e., that the defendants knowingly attempted to frame an innocent man for the Jordan murder. Whether one considers the evidence concerning the efforts to obtain information from federal prisoner Froniabarger or the evidence concerning the events of January 22, 1973, leading up to Irvin's identification of plaintiff, or all of plaintiff's evidence together, the *most* favorable conclusion for plaintiff which *reasonably* could be drawn is that the investigation in late 1972 and early 1973 was vigorously pursued without the thoroughness which had characterized the Jordan murder investigation up to then. Fatally absent from plaintiff's evidence were facts which would permit a trial jury to conclude reasonably that defendants *knew* that Irvin *knew* that he was not telling the truth. To ask the jury to draw the conclusion from plaintiff's evidence that defendants intentionally sought to frame plaintiff for a crime he did not commit would be asking the jury to reach a conclusion unsupported by the evidence or by *reasonable* inferences based on the evidence. The jury will not be permitted to resort to speculation.

### Defendants Were Not Acting Under Color of State Law

Even if we assume that plaintiff's evidence was sufficient to permit a jury to

determine whether he was deprived of a constitutional right, plaintiff's evidence failed to satisfy the second element of a § 1983 claim—the deprivation must have been caused by a person acting under color of state law.

Just because defendants were police officers at the time of their purported actions does not mean that every action taken by them was under color of law. The definition of acting under color of state law was set forth in *United States v. Classic:* "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941) (citations omitted).

> It is the nature of the act performed by a state official, not the status of a state official as such, that is determinative of the applicability of 42 U.S.C. § 1983. [citations omitted.] To establish that an act was performed under color of state law, there must exist some authority vested by the state in the .official to act in regard to the constitutional right of which appellant contends he has been denied. [citation omitted]

*Triplett v. Azordegan,* 570 F.2d at 823.

Whether the defendants' actions in this case are characterized as allegedly withholding information from the prosecuting attorney and grand jury or, in the case of defendant Cool, allegedly testifying falsely before the grand jury, the defendants were not exercising authority vested in them by the State. Defendants' actions were similar to the actions of any citizen in providing or withholding information concerning a crime.

In *Myers v. Bull,* 599 F.2d 863 (8th Cir. 1979), *cert. denied,* 444 U.S. 901, 100 S.Ct. 213, 62 L.Ed.2d 138 (1979) plaintiff, then incarcerated in the Missouri State Penitentiary, sought damages under § 1983 for allegedly false testimony given by police officer Bull at trial and at a suppression hearing. The Court of Appeals in affirming the dismissal of the case reaffirmed its adher-

ence to the "majority position" that "witnesses, including police officers, do not act under color of law when they testify at a judicial proceeding." *Id.* at 865–66. Witnesses are absolutely immune from civil rights suits alleging perjurious testimony.

> In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held prosecutors immune from civil rights suits based on acts taken in the course of their duties. In so holding, the Court stressed the need for full disclosure of relevant evidence to the jury and noted that a prosecutor might be reluctant to call witnesses if he would be subject to civil suit based on the allegation that he knew or should have known that they were testifying falsely. *Id.* at 426, 96 S.Ct. 984 [at 993]. A similar rationale would apply to witnesses who might be reluctant to give their version of the case if faced with the possibility of civil suit if their testimony is disbelieved by the trier of fact. In addition, the Court noted that there are already substantial checks on the prosecutor's activity, including prosecution under the criminal analog of § 1983, 18 U.S.C. § 242. *Id.* at 429, 96 S.Ct. 984 [at 994]. Similarly, witnesses would be liable to criminal prosecution for perjury in most, if not all, jurisdictions.

*Id.* at 866.

In *Triplett v. Azordegan,* 570 F.2d 819, the Eighth Circuit Court of Appeals held that defendant O'Brien, although a prosecuting attorney but not responsible for prosecuting plaintiff, was not acting under color of state law when he withheld information that plaintiff's confession was drug induced.

> It would be incongruous for this court to hold that O'Brien's failure to come forward with evidence constituted an act under color of state law when clearly, under *Edwards* [*v. Vasel,* 349 F.Supp. 164], even if O'Brien had been called as a witness and perjured himself concerning his knowledge of appellant's confession,

his act of perjury would not have been performed under color of state law.

*Id.* at 823.

Similarly here, it would be incongruous to permit defendants to be sued for a civil rights violation for withholding information when they would have been immune had they testified falsely about what they knew.

Plaintiff's claim in this case does not demonstrate a failure of the system, but how effectively the judicial system works. A higher level of proof is required at trial than before the grand jury.

> "Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.

> . . . .

> "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

*Gerstein v. Pugh,* 420 U.S. 119, 120–21, 95 S.Ct. 854, 866, 43 L.Ed.2d 54 (1975) (quoting *Brinegar v. United States,* 338 U.S. 160, 174–75, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)).

The application of the different standards of proof in plaintiff Willis' case resulted in his indictment and subsequent acquittal. As *Gerstein* states, the system should reach this result when the evidence which satisfies a probable cause determination does not rise to the level of "beyond a reasonable doubt." The Jackson County Grand Jury in this case found probable cause to believe plaintiff Willis had committed the murder of Jordan and indicted him for that crime. When the prosecuting attorney presented the evidence to a state trial jury, however, Willis was acquitted. Obviously, the trial jury did not believe that the state had proved plaintiff guilty "beyond a reasonable doubt."

For the reasons stated herein, the Court concludes that there is "no room for any reasonable difference of opinion as to how the case should be decided. . . ." *Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d at 883. Therefore, as a matter of law judgment should be and hereby is entered in favor of defendants and against plaintiff.