**John EDMOND, et al., Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, et al., Defendants.**

**Civ. A. No. 88–0241.**

United States District Court, District of Columbia.

Nov. 14, 1989.

Pamela Lyles, Washington, D.C., for plaintiffs.

Mark E. Nagle, Asst. U.S. Atty., Washington, D.C., for defendants.

### MEMORANDUM OF OPINION AND ORDER

REVERCOMB, District Judge.

This lawsuit arises out of the defendants' alleged violation of plaintiffs' civil rights in the investigation and prosecution of plain-tiff John Edmond's mail-order contact lens business. Plaintiffs John Edmond and Pamela Lyles allege violations of 42 U.S.C. §§ 1985 and 1986,[1] various constitutional violations under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and viola-tions of 15 U.S.C. § 1681.[2] Defendants United States Postal Service, Postal Inspec-tors Sparks, Thomas Krautheim and M. Sherwin Green, and former Assistant Unit-ed States Attorney Wendy Arnell have moved to dismiss, or in the alternative, for summary judgment. Plaintiffs oppose this motion and have submitted documents and affidavits in support of their opposition.

### I. Legal Standard

The purpose of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Advisory Committee Note to 1963 Amendment of Fed.Rules Civ.Proc. Rule 56(e). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. Instead, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). If the pleadings, depositions, answers to interrog-atories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judg-ment as a matter of law, summary judg-ment *shall* be granted. Fed.Rules Civ. Proc. Rule 56(c); *Anderson v. Liberty Lob-by, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).

### II. Claims Against the United States Post-al Service and Federal Officers in their Official Capacities

■ Plaintiffs have sued the United States Postal Service and federal officials

---

1. There is some question whether plaintiffs ac-tually alleged a claim under section 1986; how-ever, since all of the 1985 claims fail, any corol-lary claims under 1986 would be equally unsuc-cessful.

2. Plaintiffs also initially alleged various noncon-stitutional tort claims, however, these were dis-missed by this Court in response to defendants' previous motion to dismiss. See *Order*, dated September 30, 1988.

Sparks, Krautheim, Green and Arnell in their official capacities for compensatory and punitive damages. Defendants correctly argue, however, that these defendants are immune from suit under the principle of sovereign immunity.[3] "The United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941). The doctrine bars suits for damages against the federal government, its agencies, and federal officials when sued in their official capacities. *Clark v. Library of Congress,* 750 F.2d 89, 103–104 (D.C.Cir.1984); *Kline v. Republic of El Salvador,* 603 F.Supp. 1313, 1316 (D.D.C. 1985).

The doctrine of sovereign immunity here protects the Postal Service and the other defendants sued in their official capacities from all of plaintiffs' claims in the instant case. See *Laswell v. Brown,* 683 F.2d 261, 268 (8th Cir.1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *Seibert v. Baptist,* 594 F.2d 423, 428 (5th Cir.1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980); *Kline v. Republic of El Salvador, supra,* 603 F.Supp. at 1316–1317. All of plaintiffs' claims against the United States Postal Service and those claims against the individual federal officers to the extent that they are being pursued against them in their official capacities are hereby DISMISSED.

**3.** For reasons unknown to the Court, plaintiffs have completely failed to brief this issue.

**4.** In its Order of September 30, 1989, the Court found both venue and personal jurisdiction over the federal defendants in claims against them in their official capacities because the Postal offices were located in the District of Columbia. The Court, however, did not preclude a different ruling on a full motion for plenary summary judgment.

**5.** Declaration of Wendy Patricia Arnell, filed on May 3, 1988 in support of Federal Defendants' (First) Motion to Dismiss.

**6.** Federal courts are authorized pursuant to Federal Rules of Civil Procedure 4(e) and 4(f) to look to state law to determine in what manner

### III. Whether the Court has personal jurisdiction over defendant Arnell[4]

A plaintiff in district court must plead essential jurisdictional facts and must carry throughout the litigation the burden of showing that he is properly in court. "If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); see also *Reuber v. United States,* 750 F.2d 1039, 1052 (D.C.Cir.1984).

Since defendant Arnell does not reside in the District of Columbia,[5] personal jurisdiction may be invoked over her only pursuant to the District's long-arm statute.[6] D.C. Ann.Code §§ 13–422, 13–423; *Reuber v. United States, supra,* 750 F.2d at 1049. Section 13–423(a)(3)[7] of the statute authorizes jurisdiction over a person who causes tortious injury in the District of Columbia by an act or omission in the District of Columbia. The provision "clearly separates the act from the tortious injury and affords personal jurisdiction over non-residents only when *both the act and the injury occur in the District.*" *Margoles v. Johns,* 333 F.Supp. 942, 944 (D.C.D.C.

and under what circumstances a nonresident party can be subjected to the jurisdiction of a federal district court. *United States v. First Nat. City Bank,* 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965); *Gatewood v. Fiat, S.p.A,* 617 F.2d 820, 822 n. 3 (D.C.Cir.1980).

**7.** Section 13–423(a)(3) is the only section that could possibly provide grounds for jurisdiction in the District of Columbia as plaintiffs offer absolutely no facts tending to show that Arnell "regularly does or solicits business, [or] engages in any other persistent course of conduct in the District of Columbia" which is required by section 13–423(a)(4).

1971), *affirmed,* 483 F.2d 1212 (D.C.Cir. 1973).

Only two of plaintiffs' alleged injuries could have occurred in the District of Columbia. First, on the night of their arrest, plaintiffs were allegedly taken by the Postal Inspectors to the Washington D.C. office where they were fingerprinted and photographed. *Amended Complaint,* par. 29; *Declaration of John Edmond,* par. 16. Second, Ms. Arnell sent an allegedly defamatory letter about plaintiff Lyles to the Washington D.C. Bar Association's legal counsel. Exhibit D to *Memorandum in Opposition to Motion to Dismiss.* Neither incident is legally sufficient to confer jurisdiction over defendant Arnell.

Arnell's only link to the fingerprint session is her alleged participation in a broad "conspiracy" to violate plaintiffs' civil rights. *Plaintiffs' Opposition,* p. 14; *Amended Complaint,* par. 4; *Declaration of John Edmond,* par. 16. No facts of record, however, show that Arnell actually joined this "conspiracy" and plaintiffs' allegations alone are insufficient to establish the jurisdiction of this court. *Naartex Consulting Corporation v. Watt,* 722 F.2d 779 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984); *Lott v. Burning Tree Club, Inc.,* 516 F.Supp. 913 (D.C.D.C.1980); *accord Daughtry v. Arlington County Va.,* 490 F.Supp. 307 (D.C.D.C.1980). Furthermore, the sending of an allegedly defamatory letter is legally insufficient to establish an act occurring within Washington D.C. *Tavoulareas v. Comnas,* 720 F.2d 192 (D.C.Cir. 1983); *Moncrief v. Lexington Herald–Leader Co.,* 631 F.Supp. 772 (D.C.D.C. 1985), *affirmed,* 807 F.2d 217 (D.C.Cir. 1986). Accordingly, all claims against defendant Arnell are hereby DISMISSED.

## IV. Plaintiffs' Substantive Claims

Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (hereinafter referred to as *"Plaintiffs' Opposition"*) categorizes plaintiffs' claims into four basic theories: 1) that defendants conspired "to cause plaintiffs to be arrested without probable cause in violation of plaintiffs' fourth amendment rights";[8] 2) that defendants conspired "to violate plaintiffs' fifth amendment rights by illegally seizing plaintiffs' mail" by failing to give the proper notice or service of the Government's temporary restraining order and preliminary injunction;[9] 3) that defendants conspired "to violate plaintiff John Edmond's sixth amendment rights by interfering with his right to counsel";[10] and 4) that "defendant Green violated plaintiff John Edmond's rights under 15 U.S.C. 1681(b), (n) and (o) by illegally obtaining a copy of his credit report without plaintiff's consent or notice."[11] We now examine each of plaintiffs' substantive claims.

### A. Plaintiffs' Fourth Amendment Claims

Although every person has the constitutional right to be free from arrest or detention without probable cause, the finding of an indictment, fair upon its face, by a properly constituted grand jury conclusively determines the existence of probable cause to arrest. *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 612, n. 11, 94 S.Ct. 1895, 1902, n. 11, 40 L.Ed.2d 406 (1974); *Ex parte United States,* 287 U.S. 241, 250, 53 S.Ct. 129, 131, 77 L.Ed. 283 (1932). Probable cause exists *even if* the indictment is based on unreliable, incompetent or even perjured testimony. *United States v. Calandra,* 414 U.S. 338, 344–345, 94 S.Ct. 613, 618–619, 38 L.Ed.2d 561 (1974); *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), *reh'g denied,* 351 U.S. 904, 76 S.Ct. 692, 100 L.Ed. 1440 (1956); *Holt v. United States,* 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).[12]

---

8. *Plaintiffs' Opposition,* p. 11; *Plaintiffs' Supplemental Opposition,* pp. 3–6.

9. *Plaintiffs' Opposition,* p. 18; *Plaintiffs' Supplemental Opposition,* p. 6.

10. *Plaintiffs' Opposition,* p. 22; *Plaintiffs' Supplemental Opposition,* p. 7.

11. *Plaintiffs' Opposition,* p. 26; *Plaintiffs' Supplemental Opposition,* p. 8.

12. Plaintiffs' reliance on malicious prosecution cases is misplaced. "Probable cause to initiate a legal proceeding" is a vastly different legal concept than "probable cause to arrest."

■ It is undisputed that plaintiffs here were indicted by a grand jury and were arrested pursuant to warrants issued as a result of the indictments. *Amended Complaint,* pars. 26; *Declaration of M. Sherwin Green,* pars. 21, 22. No contention is made that there was any deficiency on the face of the indictment or that the grand jury was improperly constituted. Moreover, none of the facts of record show that the indictment was based upon something other than testimony or other evidence which witnesses believed to be true at the time the information was presented to the grand jury.[13]

Accordingly, plaintiffs' fourth amendment claims fail as a matter of law. See *Willis v. Cool,* 546 F.Supp. 458 (W.D.Mo. 1982), *affirmed,* 714 F.2d 67 (8th Cir.1983).

**B. Plaintiffs' Fifth Amendment Claims**

■ Contrary to plaintiffs' allegations, the undisputed facts conclusively establish that plaintiffs were served with proper notice of the temporary restraining order and notice of the preliminary injunction hearing.[14] Assistant U.S. Attorney Arnell mailed a copy of the temporary restraining order and a notice of hearing on a request for preliminary injunction by federal express to the plaintiffs' home on November 14, 1989. *Declaration of M. Sherwin Green,* par. 13. Service was effective at that time. Fed. Rules Civ. Proc., Rule 5(b). Moreover, there is no dispute that these documents were received by an adult at plaintiffs' home address. See *Declaration of M. Sherwin Green,* par. 15; accord *Declaration of Sharon Lyles.* Plaintiff Ed-

mond also admits that he received actual telephone notice of the preliminary injunction hearing prior to the hearing date. *Declaration of John Edmond,* par. 12. Plaintiffs' fifth amendment claims must be DISMISSED.

**C. Plaintiffs' Sixth Amendment Claims**

■ Plaintiff Edmond's claims that defendants somehow "interfered" with his sixth amendment right to counsel also fail. The record in no way demonstrates, (nor does plaintiff even attempt to argue), that Mr. Edmond did not have the assistance of counsel at a critical stage of prosecution. See *United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984); *Estelle v. Smith,* 451 U.S. 454, 469–70, 101 S.Ct. 1866, 1876–77, 68 L.Ed.2d 359 (1981).[15] The sixth amendment claims must therefore be DISMISSED.

**D. 15 U.S.C. §§ 1681b, 1681n, and 1681*o***

■ Finally, plaintiff Edmond alleges that defendant Green violated his rights under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t, by obtaining a copy of plaintiff's credit report without plaintiff's consent or notice. Defendant Green claims that he is immune from the Act's provisions under *Ricci v. Key Bancshares,* 768 F.2d 456 (1st Cir.1985), and *Ollestad v. Kelley,* 573 F.2d 1109 (9th Cir.1978).

We do not agree that *Ricci* and *Ollestad* extend immunity to defendant Green. In those cases, the federal agent was the individual who actually released the consumer information and plaintiffs thereafter

**13.** Plaintiffs have uniformly failed to present any of the actual testimony or other evidence that the grand jury considered in rendering its indictment. The only factual material presented in support of plaintiffs' theory that defendants lied to the grand jury is the vague statement that "Spitz indicated that he had presented false testimony to the grand jury." *Declaration of Joseph Serian,* par. 8. However, such a generalized, conclusionary statement does not defeat a motion for summary judgment (see *Goldberg v. U.S. Department of State,* 818 F.2d 71, 78 (D.C.Cir.1987), *cert. denied,* 485 U.S. 904, 108 S.Ct. 1075, 99 L.Ed.2d 234 (1988)), especially in the face of the heavy presumption of grand jury regularity.

**14.** The Court therefore does not reach the issue of whether plaintiffs' allegations, if true, are legally sufficient to support a cause of action for violations of plaintiffs' fifth amendment rights.

**15.** Plaintiff's reliance on *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), *reh'g denied,* 450 U.S. 960, 101 S.Ct. 1420, 67 L.Ed.2d 385 (1981), as extending the sixth amendment to an "interference" situation is misplaced. The Supreme Court in *Morrison* expressly refused to decide whether a sixth amendment right was violated. Id. at 364, 101 S.Ct. at 667.

sought to require the agent's compliance with provisions pertaining to "consumer reporting agencies." Here, the federal agent did not release, but rather received, the information. Plaintiff is not trying to make the agent comply with "consumer reporting agency" provisions, but bases liability on defendant's status as a "user of information". See 15 U.S.C. §§ 1681n, 1681o.

While there may be other reasons why plaintiff's claim under the Act may fail, the factual record regarding the circumstances of the credit report is less than complete. The Court can not at this time determine whether plaintiff's credit report was released in response to a court order or pursuant to some other lawful means. We therefore decline to grant summary judgment. This decision, however, does not preclude the Court from ruling on a subsequent motion for summary judgment.

### IV. Venue and Service of Process Issues

Defendants' claims of improper venue and insufficient service of process lack merit. The factual record suggests that Green's receipt of plaintiff Edmond's credit report occurred in the District of Columbia and the Court records plainly show the plaintiffs complied with the service requirements of Rule 4(d)(5) of the Federal Rules of Civil Procedure. *Light v. Wolf,* 816 F.2d 746 (D.C.Cir.1987).

### V. Conclusion

In sum, all of plaintiffs' claims are DISMISSED save plaintiff Edmond's claim against defendant Green in his individual capacity for alleged violations of the Fair Credit Reporting Act.

SO ORDERED.