**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PAMELA LYLES; JOHN EDMOND,
<u>Plaintiffs-Appellees,</u>

v.

DEWEY SPARKS, Inspector,
Individually and as Postal Inspector;
M. SHERWIN GREEN, Individually and
as Postal Inspector; THOMAS
KRAUTHEIM, Individually and as
Postal Inspector; WENDY ARNELL,
Individually and as U.S. Assistant
Attorney for the District of

No. 93-1442

Maryland,
<u>Defendants-Appellants,</u>

and

UNITED STATES POSTAL SERVICE
GENERAL COUNSEL; ROGER WOLF,
Individually and as Assistant
Attorney General of the State of
Maryland; ARNOLD POPKIN; RICHARD
SPITZ, JR.; UNITED STATES OF
AMERICA,
<u>Defendants.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
M. J. Garbis, District Judge.
(CA-90-1181)
(CA-92-2912)

Argued: September 27, 1995

Decided: March 19, 1996

Before WILKINS, NIEMEYER, and WILLIAMS, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkins and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** David Ira Salem, Assistant United States Attorney, Greenbelt, Maryland, for Appellant. Pamela Lynne Lyles, Washington, D.C., for Appellees. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Greenbelt, Maryland, for Appellant.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Following an investigation into a contact lens mail order business, the United States Postal Service obtained a criminal indictment charging John Edmond and his attorney, Pamela Lyles, with mail fraud. Edmond and Lyles were arrested, detained, and released on bond. After Edmond and Lyles filed a motion to dismiss their indictment for prosecutorial vindictiveness, the government dismissed the indictment. And this civil action followed.

In their civil complaint, Edmond and Lyles alleged that various postal inspectors and the Assistant United States Attorney assigned to the case violated their constitutional rights in securing their indictment and arresting them. Asserting official immunity from suit, those defendants filed a motion to dismiss or, alternatively, for summary judgment, but the district court denied their motion. Because we hold (1) that absolute prosecutorial immunity shields the Assistant United States Attorney from the constitutional tort claims against her; (2) that absolute witness immunity shields one of the postal inspectors from the Fourth Amendment claim that he committed perjury before the grand jury; and (3) that qualified immunity shields the postal inspec-

2

tors from the remaining constitutional tort claims against them, we reverse.

I

John Edmond owned and operated Landover Contact Lens Center ("Landover Lens"), a contact lens mail order company located in Maryland. Pamela Lyles was Edmond's counsel and, although not an owner, was intimately involved in running Landover Lens. Prompted by numerous customer complaints, Postal Inspector M. Sherwin Green began an investigation of Landover Lens in early 1986. Green's investigation led to civil administrative action against Landover Lens and a 15-count criminal indictment charging Edmond and Lyles with mail fraud.

The criminal indictment charged that Edmond and Lyles had carried out a scheme to defraud contact lens suppliers by ordering lenses from them, paying them the minimum amount required to keep the account open, refusing to pay the remainder of the account or paying with checks not covered by sufficient funds, and, when further credit was refused, moving to another supplier. The indictment also alleged that in some instances Edmond and Lyles had used different business names to obtain lenses from suppliers who had already cut them off.

Green and his supervisor Thomas Krautheim, accompanied by other postal inspectors and local police officers, arrested Edmond and Lyles at their Maryland apartment during the pre-dawn hours of February 18, 1987. The officers took Edmond and Lyles to the Postal Inspection Division Headquarters in Washington, D.C., where they were questioned, booked, and fingerprinted. The officers then transported Edmond and Lyles to the federal courthouse in Baltimore, Maryland, where they were held for nine hours before receiving a bail hearing and being released on bond pending trial.

Edmond and Lyles filed a motion to dismiss their indictment for prosecutorial vindictiveness. After a hearing on the motion had been scheduled, the United States Attorney for the District of Maryland dismissed the indictment.

3

Thereafter, in February 1988, Edmond and Lyles filed a civil action in the United States District Court for the District of Columbia based on their allegedly wrongful prosecution and arrest against the United States Postal Service General Counsel; Postal Inspectors Green, Krautheim, and Dewey Sparks; Assistant United States Attorney Wendy Arnell; Assistant Attorney General for the State of Maryland Roger Wolf; and two complaining witnesses, Richard Spitz, Jr., a businessman who had leased facilities to Landover Lens, and Arnold Popkin, Spitz' attorney. As amended, the complaint alleged various constitutional torts under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), as well as violations of 42 U.S.C. §§ 1983 and 1985, 15 U.S.C. § 1681 (Fair Credit Reporting Act), 12 U.S.C. § 3408 (Right to Financial Privacy Act), and Maryland law.

Specifically regarding the federal defendants, Edmond and Lyles claimed, inter alia, (1) that Arnell had threatened to indict Edmond if he filed a bankruptcy petition; (2) that Arnell had secured their indictment by suborning perjured testimony from Spitz; (3) that Arnell and Green had made false statements before the grand jury; (4) that Arnell and Green had conspired to make, and made, false representations about Edmond and Lyles in other judicial proceedings; (5) that Sparks had failed to take any action to stop Green's wrongful conduct; and (6) that Arnell had sent a defamatory letter to the D.C. Bar Counsel informing him of Lyles' indictment in Maryland and, thereafter, had failed to notify the Bar Counsel of the indictment's dismissal. Edmond and Lyles also claimed as abuses during their arrest and processing: (1) that the officers had removed Edmond from his apartment in his bedclothes; (2) that Green had attempted to prevent Edmond from wearing shoes as they left the apartment; (3) that Green and Krautheim had declined to produce an arrest warrant upon Lyles' inquiry; (4) that the arresting officers had verbally abused and humiliated them; and (5) that the officers had transported Edmond and Lyles to the Postal Inspection Division Headquarters in Washington, D.C., for questioning, fingerprinting, and booking and then to Baltimore, where they were held for nine hours before receiving a bail hearing. Finally, Edmond and Lyles claimed that Arnell and Green had falsely named Lyles as an owner of Landover Lens and sought her indictment and arrest to deny Edmond his counsel of choice.

4

The federal defendants filed a motion to dismiss the complaint, or, in the alternative, for summary judgment on several grounds. In November 1989, the D.C. district court dismissed the entire action "save plaintiff Edmond's claim against defendant Green in his individual capacity for alleged violations of the Fair Credit Reporting Act." Edmond v. United States Postal Serv. , 727 F. Supp. 7, 12 (D.D.C. 1989).**1**

While their appeal of the D.C. district court's dismissal order was pending before the U.S. Court of Appeals for the District of Columbia, Edmond and Lyles filed a separate action in the district court in Maryland against the United States, Green, Popkin, and Spitz. In their Maryland complaint--which contained claims under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, and state law--Edmond and Lyles alleged that Green, Popkin, and Spitz had conspired to bring criminal prosecutions against them by presenting false information to both the United States Attorney's office and the grand jury impanelled in Maryland.

Then, on November 22, 1991, the D.C. Circuit handed down its decision reversing in part the district court's ruling dismissing Edmond's and Lyles' D.C. action. Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 417 (D.C. Cir. 1991). The court of appeals concluded that the D.C. district court had "totally ignored" two of Edmond's and Lyles' constitutional tort theories, "Perjurer's Liability"--which "asserts that someone who causes an indictment and consequent arrest by perjuring himself or arranging for the submission of perjured testimony before the grand jury violates the Fourth Amendment"--against Arnell and Green and"Detour-and-Delay"--which "rests on an assertion that the manner in which an arrest was accomplished was unlawful"--against Green and Krautheim. Id. at 419.**2** The D.C. Circuit also ruled that the lower court had

_____

**1** Green was subsequently granted summary judgment on the Fair Credit Reporting Act claim in January 1990. Defendants Spitz, Popkin, and Wolf had been dismissed earlier for lack of personal jurisdiction. Although Edmond and Lyles later moved to rename Spitz and Popkin, the district court never explicitly ruled on that motion. See Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 418-19 (D.C. Cir. 1991).

**2** The D.C. Circuit explained that while Edmond's and Lyles' Detour-and-Delay theory "is arguably cognizable under the Fourth Amendment,

5

given inadequate consideration to Edmond's Sixth Amendment Interference-with-Counsel claim against Arnell, Green, and Krautheim, which was based on the allegation that Lyles' wrongful arrest infringed upon Edmond's right to retain her as his counsel. Id. at 423-24. In remanding those three constitutional tort theories, the court noted that Edmond and Lyles had "conceded at oral argument that no other constitutional claims and no statutory or common law claims [had been] raised for review." Id. at 419.**3**

Following remand, the D.C. district court granted the Postal Service's motion to transfer Edmond's and Lyles' case to the District of Maryland, where it was consolidated with their Maryland action. The federal defendants filed a motion for partial dismissal of the complaint or, alternatively, for partial summary judgment, contending that they enjoyed "absolute and/or qualified immunity" from the surviving Bivens-type claims that had been transferred from the District of Columbia. The district court denied the motion, and this interlocutory appeal followed.

II

Appellants first contend that the district court erred in refusing to dismiss the constitutional tort claims against federal prosecutor Arnell on absolute immunity grounds. They maintain that Arnell enjoys absolute immunity from the surviving Bivens-type claims against her because the alleged conduct that underlies those claims qualifies as "quasi-judicial." We agree.

_____

. . . in a case of this sort, it may be better articulated under the Fifth Amendment (because Edmond and Lyles already had been indicted at the time of alleged wrongdoing)." Edmond, 949 F.2d at 423.

**3** After the D.C. Circuit's opinion, therefore, Edmond and Lyles no longer had any constitutional tort claims against Postal Inspector Sparks. Edmond's and Lyles' complaint does not allege that Sparks committed or suborned perjury or that Sparks was even present at their arrest. The D.C. Circuit's opinion also overturned the lower court's ruling that it lacked personal jurisdiction over Arnell, Spitz, and Popkin and permitted jurisdictional discovery against those defendants. Edmond, 949 F.2d at 425-26. The court of appeals did, however, affirm the district court's dismissal of Wolf. Id. at 427.

6

In Bivens-type actions, as at common law, prosecutors enjoy absolute immunity for conduct "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976).**4** Absolute immunity prevents vexatious litigation from deflecting prosecutors' energies and shading their judgment. Id. at 423. Because absolute immunity "contravenes the basic tenet that individuals be held accountable for their wrongful conduct," however, it is available only when its "`contributions . . . to effective government . . . outweigh the perhaps recurring harm to individual citizens.'" Westfall v. Erwin, 484 U.S. 292, 295-96 (1988) (quoting Doe v. McMillan, 412 U.S. 306, 320 (1973)). The focus of immunity analysis, therefore, is "on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." Buckley v. Fitzsimmons, 113 S. Ct. 2606, 2615 (1993) (emphasis added).

To determine whether Arnell is absolutely immune from Edmond's Sixth Amendment claim that she sought Lyles' indictment to deny Edmond his counsel of choice, we need look no farther than Imbler v. Pachtman. In Imbler, the Supreme Court accorded absolute immunity to a prosecutor who was accused of maliciously and unlawfully charging the plaintiff with murder. 424 U.S. at 415-16. While recognizing that "[a]t some point . . . the prosecutor no doubt functions as an administrator rather than as an officer of the court" and that "[d]rawing a proper line between these functions may present difficult questions," the Imbler Court specified that absolute immunity protects prosecutors' decisions "whether and when to prosecute." Id. at 431 n.33; see also Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir. 1981) (recognizing that decision to initiate prosecution is immunized under Imbler). Edmond's Sixth Amendment claim against Arnell for prosecuting Lyles, therefore, implicates conduct that Imbler expressly found to be shielded by absolute immunity.

_____

**4** Although Imbler and several of the other immunity cases cited herein were decided in the context of suits against state officers under 42 U.S.C. § 1983, their analysis extends to Bivens -type suits brought directly under the Constitution against federal officials. See Butz v. Economou, 438 U.S. 478, 504 (1978); Ehrlich v. Giuliani, 910 F.2d 1220, 1222 n.2 (4th Cir. 1990).

7

The Supreme Court also held in Imbler that absolute immunity protected the prosecutor from allegations that he had knowingly used perjured testimony and suppressed material evidence at the plaintiff's trial. 424 U.S. at 431 ("[I]n presenting the State's case, the prosecutor is immune . . ."). While the Court did not address whether prosecutors are immune from civil suits for damages stemming from their presentation of the government's case before the grand jury, the rationale behind Imbler persuades us that such immunity exists. The presentation of testimony and other evidence before an indicting grand jury is a prosecutorial activity "intimately associated with the judicial phase of the criminal process." Id. at 430; accord Morrison v. City of Baton Rouge, 761 F.2d 242, 248 (5th Cir. 1985) (per curiam); Maglione v. Briggs, 748 F.2d 116, 118 (2d Cir. 1984); Gray v. Bell, 712 F.2d 490, 502 (D.C. Cir. 1983), cert. denied, 104 S. Ct. 1593 (1984). Accordingly, we hold that Arnell enjoys absolute immunity from claims that she made false representations and suborned perjury before the grand jury that indicted Edmond and Lyles.

The district court in this case focused on the claim that Arnell had threatened to indict Edmond if he filed for bankruptcy. While acknowledging that a prosecutor's pre-indictment conduct is not investigatory per se, the court refused to hold "that an alleged threat to obtain an indictment if an individual declares bankruptcy is `intimately associated with the judicial phase' as a matter of law." Accordingly, it denied the federal defendants' motion to dismiss the surviving Bivens-type claims against Arnell.

In declining to dismiss Arnell, the district court relied on a claim that no longer remained in the present action. After the D.C. district court had dismissed all of Edmond's and Lyles' Bivens-type claims, the D.C. Circuit remanded three constitutional tort theories of liability, only two of which apply to Arnell: Perjurer's Liability and Interference-with-Counsel. Because Arnell's alleged threat to indict Edmond was not part of either of those claims, the district court erred in considering arguments on it and in refusing to dismiss the claims against Arnell. In rejecting the Threat-to-Indict claim on the basis that it was no longer part of this action, we express no opinion on whether Arnell's alleged threat to indict Edmond might support a viable constitutional claim or whether Arnell's absolute immunity would shield her from such a claim.

8

III

We also agree with Appellants that the district court erred in failing to dismiss the Perjurer's Liability claim against Green for his allegedly false testimony before the federal grand jury that indicted Edmond and Lyles.

In Briscoe v. LaHue, 460 U.S. 325, 326 (1983), the Supreme Court held that government officials who testify at criminal trials are absolutely immune from damages liability based on their testimony. The Court explained that absolute immunity for testimony in judicial proceedings had been "well established" at common law before the enactment of 42 U.S.C. § 1983 to prevent witnesses from engaging in "self-censorship" by refusing to testify or, after taking the stand, by distorting their testimony to reduce the possibility of subsequent liability. Id. at 330-33. Granting immunity to official witnesses also prevents interference with the performance of their public duties by avoiding costly and time-consuming litigation. Id. at 343-44.

Because the reasoning behind Briscoe is equally applicable to government officials' grand jury testimony, we hold that Green enjoys absolute immunity from the Perjurer's Liability claim against him based on his testimony before the grand jury. Our holding follows a fortiori from our decisions in Mangold v. Analytic Services, Inc., No. 94-1307, slip op. at 7-13 (4th Cir. Mar. 12, 1996) (applying absolute immunity to government contractor for statements made to government investigators during official investigation), and Holmes v. Eddy, 341 F.2d 477, 480 (4th Cir.) (per curiam) (applying absolute immunity to witness for statements made to SEC during SEC investigation), cert. denied, 382 U.S. 892 (1965)). And, in extending absolute immunity to government witnesses for their grand jury testimony, we join the majority of circuits that have addressed the issue. See San Filippo v. U.S. Trust Co., 737 F.2d 246, 254 (2d Cir. 1984), cert. denied, 470 U.S. 1035 (1985); Macko v. Byron , 760 F.2d 95, 97 (6th Cir. 1985) (per curiam); Kincaid v. Eberle, 712 F.2d 1023, 1023-24 (7th Cir.) (per curiam), cert. denied, 464 U.S. 1018 (1983); Anthony v. Baker, 955 F.2d 1395, 1400-01 (10th Cir. 1992); Strength v. Hubert, 854 F.2d 421, 423-25 (11th Cir. 1988) (per curiam); cf. Williams v. Hepting, 844 F.2d 138, 141-43 (3d Cir.) (immunizing testimony given in adversarial pretrial proceeding), cert. denied, 488

9

U.S. 851 (1988); Holt v. Castaneda, 832 F.2d 123, 124-27 (9th Cir. 1987) (same), cert. denied, 485 U.S. 979 (1988); Briggs v. Goodwin, 712 F.2d 1444, 1448-49 (D.C. Cir. 1983) (immunizing sworn statement made at hearing on motion during grand jury phase of investigation), cert. denied, 464 U.S. 1040 (1984); but see Wheeler v. Cosden Oil and Chem. Co., 734 F.2d 254, 261 n.16, modified on other grounds, 744 F.2d 1131 (5th Cir. 1984).

IV

Finally, Appellants contend that the district court erred in refusing to dismiss, on the basis of qualified immunity, the Detour-and-Delay and Interference-with-Counsel claims against Krautheim and Green.[5] They argue that neither of those claims allege violations of rights that were clearly established at the time of Krautheim's and Green's alleged conduct. Again, we agree.

To survive summary judgment on qualified immunity grounds, a constitutional tort claim against a federal law enforcement official must rest on a violation not only of currently applicable federal law, but also of federal law that was "clearly established" at the time the alleged conduct occurred. Harlow v. Fitzgerald , 457 U.S. 800, 818 (1982). Qualified immunity provides law enforcement officials with "the necessary latitude to pursue their investigations without having to anticipate, on the pain of civil liability, future refinements or clarifications of constitutional law." Tarantino v. Baker, 825 F.2d 772, 775 (4th Cir. 1987).

To determine whether a specific federal right was clearly established, we focus "not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). Qualified immunity thus protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

_____

[5] Because we conclude that Arnell is absolutely immune from all of the constitutional tort claims against her, we need not address Appellants' alternative argument that she enjoys qualified immunity from those claims.

10

Edmond and Lyles had the burden of establishing a "prima facie case of [Appellants'] knowledge of impropriety, actual or constructive." Krohn v. United States, 742 F.2d 24, 31 (1st Cir. 1984). Yet they have failed to provide any authority indicating that their Detour-and-Delay and Interference-with-Counsel claims implicate constitutional rights that were clearly established at the time of Appellants' alleged conduct.

The Detour-and-Delay claim--which appears to have been first articulated, not by Edmond and Lyles, but by Judge Edwards in the D.C. Circuit's opinion, see Edmond, 949 F.2d at 419 ("The second theory, which might be called Detour-and-Delay, rests on an assertion that the manner in which an arrest was accomplished was unlawful") --is based on the post-arrest procedures employed by Postal Inspectors Krautheim and Green. Edmond and Lyles contend that after their arrest, the postal inspectors transported them for questioning, fingerprinting, and booking to the Postal Inspection Division Headquarters in Washington, D.C., and then delivered them to the U.S. Marshal in Baltimore, where they were held for nine hours before receiving a bail hearing. We have found no legal support for the proposition that these allegations make out a violation of a clearly established constitutional right, and neither the D.C. Circuit nor counsel in this case have provided any.

The same is true for Edmond's and Lyles' Interference-with-Counsel claim. They contend that Arnell, Krautheim, and Green denied Edmond's right to the counsel of his choice by seeking Lyles' indictment, even though the federal grand jury determined that there was probable cause to charge her. Again, we can find no authority for the theory that the government improperly interferes with the constitutional right to counsel of an attorney's clients by seeking or obtaining that attorney's indictment.

Because Edmond's and Lyles' Detour-and-Delay and Interference-with-Counsel claims assert constitutional rights that were not, and are not, clearly established, the district court erred in declining to afford Green and Krautheim qualified immunity from the surviving constitutional tort claims against them.

11

V

Accordingly, we reverse and remand this case with the direction to the district court to dismiss all of Edmond's and Lyles' surviving Bivens-type claims.**6**

REVERSED AND REMANDED

_____

**6** In light of our ruling that the district court should have dismissed all of Edmond's and Lyles' surviving constitutional tort claims, we do not reach Appellants' argument that the court erred in declining to rule on their motion for summary judgment on the ground that they had refused to permit discovery.

12